**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-02377-001-TUC-JCH (LCK) |
| Plaintiff, | **ORDER** |
| v. | |
| Isai Morales-Cisneros, | |
| Defendant. | |

The Government moves to detain Defendant Isai Morales-Cisneros pending trial on the grounds that he is a serious flight risk and a danger to the community. Having considered the Pretrial Services report, the facts proffered by the Government, the testimony given at the detention hearing, the exhibits, and Defendant's memorandum, the Court will set this matter for a release hearing so that Defendant can be released on his own recognizance with conditions.

## Background

Defendant is charged with conspiracy to transport illegal aliens for profit and conspiracy to transport stolen vehicles in interstate or foreign commerce. (Doc. 50.) Defendant, who is 26 years old, has no criminal record and has been employed fulltime at the same job for nearly five years. (Doc. 17 at 2–3.) He is a lifelong resident of the Phoenix area, where he currently resides with his wife and two children. (*Id.* at 2.) He reported to Pretrial Services that he has daily contact with his mother and two of his siblings, all of whom reside in Arizona, and that he has an additional sibling whose whereabouts are

unknown. (*Id.*) He further reported that he travels to Mexico once every three months, and that he traveled to Agua Prieta, Sonora, Mexico one month before his arrest and to Naco, Sonora, Mexico three weeks before his arrest. (*Id.*)

Based on the foregoing information, Pretrial Services recommends that Defendant be released on his own recognizance with conditions. (*Id.* at 3–4.) At Defendant's initial appearance, the Government objected to the recommendation on the grounds that Defendant is a serious flight risk and a danger to the community. In support of its objection, the Government proffered the following facts: Defendant recruits and pays drivers to smuggle aliens from southern Arizona to Phoenix: phone records and statements made by cooperating witnesses tie Defendant to over 50 alien-smuggling events, which included the smuggling of over 200 aliens; Defendant has been recorded telling drivers to conceal aliens in the trunks of their vehicles; phone records and victim statements link Defendant to 35 vehicle thefts; Defendant has regular contact with his third sibling, Israel Morales-Cisneros, and misrepresented that fact to Pretrial Services; Israel fled to Mexico after being released on bail pending drug-trafficking charges; and Israel coordinates the smuggling of aliens from Naco, Sonora, Mexico into the United States.

The Government further proffered that videos taken from Israel's phone show that Defendant was present during the torture of two bound and blindfolded individuals. In response to this information, the Court deferred its decision on detention and set a dangerousness hearing. The hearing took place on October 19 and November 9, 2021. (Docs. 41, 45, 60.)

At the hearing, the Government presented the testimony of Matthew Cool, a special agent for Homeland Security Investigations.[1] According to Agent Cool, a three-year investigation into an alien-smuggling conspiracy revealed that Defendant is the owner of a phone number associated with at least 50 alien-smuggling events and 35 vehicle thefts occurring in southern Arizona. (Doc. 45 at 8–10.) Agent Cool testified that Defendant's

---

[1] "Tr." refers to the transcript for the November 9 hearing, which has been prepared but not yet docketed. The transcript for the October 19 hearing is filed at docket entry number 45.

- 2 -

role in the alien-smuggling organization is to recruit individuals to drive aliens from the border region to Phoenix. (*Id.* at 7–8.) Agent Cool testified that Defendant's role in the vehicle-theft operation is to lure would-be smugglers to the southern border, where their vehicles would be stolen. (*Id.* at 11.)

Agent Cool also offered testimony about Defendant's brother, Israel Morales-Cisneros. Agent Cool testified that Israel fled the country in 2018 after being released on bail pending drug-trafficking charges. (*Id.* at 12–13.) Agent Cool explained that Israel's role in the alien-smuggling organization is to assist in smuggling aliens over the border, so that they can then be driven to Phoenix. (*Id.* at 11.) Agent Cool described several videos found on Israel's cellphones (seized during his arrest), which depict two bound and blindfolded individuals being kicked and struck with a stick. (*Id.* at 13–14, 17–18.) Agent Cool testified that Defendant appears in one of the videos, although Agent Cool acknowledged that none of the videos show Defendant taking part in the physical abuse. (*Id.* at 18; Tr. 17, 25–26.) Agent Cool could not state with certainty when the videos were made but believed based on their titles that they were created in February 2017. (Doc. 45 at 22–23; Tr. 15–16.)

Agent Cool testified that Defendant was arrested in September 2021, and that a search of Defendant's car turned up a handgun. (Doc. 45 at 26.) Agent Cool acknowledged, however, that Defendant may lawfully possess firearms. (Tr. 11.) Agent Cool also testified that Defendant gave a *Mirandized* statement admitting that he was present during the abuse captured on video (though he denied striking anyone) and that most of his criminal proceeds were invested in properties in Mexico. (Doc. 45 at 18–19, 25–26.)

The Court viewed, during the hearing and again in chambers, the videos taken from Israel's cellphones. (Ex. 4.) One video shows Defendant standing next to one of the blindfolded men. However, none of the videos show Defendant striking anyone.

## Legal Standard

The Bail Reform Act "mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of any other person and the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)(1)). "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (per curiam) (citing *United States v. Motamedi*, 767 F.2d 1403, 1406–07 (9th Cir. 1985)). "Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019) (per curiam).

## Discussion

### I. Basis for Detention Hearing

A federal court may hold a detention hearing only if one or more of the seven circumstances listed in 18 U.S.C. § 3142(f)(1) and (f)(2) are present. *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (per curiam). Here, Defendant is correct that none of the circumstances set forth in § 3142(f)(1) are present. However, during the initial appearance, the Government contended that Defendant is a flight risk because of his connections to Mexico. A detention hearing is authorized under § 3142(f)(2)(A) "in a case that involves . . . a serious risk that [the defendant] will flee." The Government's argument is sufficient to invoke this provision.[2]

### II. Findings

The Government contends that Defendant should be detained because he poses a serious risk of flight. According to the Government, this is not the average alien-smuggling

---

[2] The statutory basis for the detention hearing can implicate another issue relating to the defendant's dangerousness. According to some courts, a defendant may be detained based solely on a finding of dangerousness only if the detention hearing is held under § 3142(f)(1). *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). Other courts have rejected this rule as creating anomalous results. *See United States v. Holmes*, 438 F. Supp. 2d 1340, 1350 (S.D. Fla. 2005). To illustrate, assume that a detention hearing is held under § 3142(f)(2)(A): If the defendant is found to be both dangerous *and* a flight risk, then he must be detained; but if the defendant is found to be dangerous *but not* a flight risk, then he must be released. It is not clear whether the rule applies in this circuit, *see Twine*, 344 F.3d 987, but the Court need not decide the issue. Regardless whether a defendant can be detained based on dangerousness alone, the Government has not met its burden to show that Defendant is dangerous.

- 4 -

or conspiracy case, as Defendant is linked to over 50 smuggling events and 35 vehicle thefts. Especially important, the Government says, is Defendant's relationship with his brother, Israel. The Government emphasizes that Israel fled the country after being criminally charged, and that Israel works with Defendant by coordinating alien-smuggling efforts from Mexico. The Government argues that Israel's escape from justice is relevant in two ways: It shows the modus operandi of his and Defendant's criminal organization, in that a member of the organization is likely to flee if released on bail pending criminal charges; and it shows that Defendant has a reliable place to go, such that flight is more feasible. Finally, the Government points out that Defendant himself admitted that he has invested most of his criminal proceeds in properties in Mexico.

The Government also argues that Defendant poses a danger to the community. The Government primarily relies on the video evidence showing that Defendant was present while others kicked and struck two bound and blindfolded men. While the Government acknowledges that Defendant did not participate in the abuse himself, it contends that his presence alone is indicative of his dangerousness, as a criminal organization that engages in such conduct is not likely to allow passive observers. To further support its dangerousness argument, the Government points to the fact that Defendant was in possession of a firearm at the time of his arrest. The Government does not dispute that Defendant may lawfully possess firearms, but it maintains there is some relevance in the fact that Defendant has access to firearms.

The Court agrees that there is a risk that Defendant will flee, and, to put it mildly, it is troubled that Defendant was present during the events captured on video. Nevertheless, the Court finds that the Government has not shown by a preponderance that there are no conditions of release that will reasonably assure Defendant's presence at future hearings. Nor has the Government shown by clear and convincing evidence that there are no conditions that will reasonably assure the safety of the community.

There is no presumption of detention in this case. *See* 18 U.S.C. § 3142(e)(2)–(3). With that in mind, the Court finds that multiple factors weigh in favor of release. *See id.*

§ 3142(g). The Court must first examine "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [relating to child sex-trafficking], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." *Id.* § 3142(g)(1). Here, Defendant is charged with conspiracy to transport illegal aliens for profit and conspiracy to transport stolen vehicles in interstate or foreign commerce. Undoubtedly, these are serious crimes, but they differ in kind from the more serious crimes set forth in the statute.[3] However, the Government has proffered facts indicating that the alleged conspiracies involved repeated criminal acts over a lengthy period, not mere one-off wrongdoings. These circumstances make the offenses more serious, so this factor weighs in favor of detention.

The Court must next consider "the weight of the evidence against the person." *Id.* § 3142(g)(2). A defendant may be more likely to flee when the evidence against him is strong. *See Motamedi*, 767 F.2d at 1408. However, this is "the least important of the various factors." *Id.* (citing *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972) (per curiam)). Here, the Government indicates that it can prove its case through phone records, recordings of telephone calls, and statements from cooperating witnesses and victims. It thus appears that the evidence is strong, which favors detention.

Next, the Court must consider "the history and characteristics of the person." 18 U.S.C. § 3142(g)(3). This includes consideration of "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," as well as whether the person was on some form of conditional release at the time of his arrest. *Id.* Here, Defendant has no criminal history (and thus no failures to appear), and there is no indication that he abuses (let alone uses) controlled substances or alcohol. As for Defendant's ties to the community, they are both plentiful and significant. Defendant is a

---

[3] One of the charges is punishable by a maximum term of ten years of imprisonment. 8 U.S.C. § 1324(a)(1)(B)(i).

United States citizen and lifelong resident of the Phoenix area, where he lives with his wife and two children. He has a fulltime job which he has held for almost five years, and he believes that he would be able to return to work if released. He is the sole provider for his family and thus has an incentive not to flee. Although his wife is a Mexican national, she has a permit to work in the United States and is in the process of obtaining permanent legal status. Furthermore, both of her children, including Defendant's biological child, are United States citizens. Finally, Defendant has daily contact with his mother and two of his siblings, all of whom live in Arizona.

On the other hand, Defendant periodically travels to Mexico and has invested in properties there. His brother, who is alleged to be his criminal business partner, lives there and presumably would assist him if he decided to flee. The Court has weighed these negative factors against the positive ones described above. On balance, Defendant's history and characteristics strongly weigh in favor of release.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As noted above, the Government's dangerousness argument is based primarily on the video evidence. While the Court agrees that the video raises cause for concern, the Government nevertheless has failed to meet its burden. In no way minimizing what is depicted on the videos, the Court observes for present purposes that Defendant took no part in the abuse, and that the events depicted occurred nearly five years ago.[4] The Government does not indicate that Defendant has engaged in any violence during the interim five years. Accordingly, the video does not show that Defendant currently poses a danger to another person or the community in general, and this conclusion remains true when considering Defendant's lawful possession of a firearm. This factor consequently supports release.[5]

---

[4] Based on the assumption that the video application utilizes a date-based naming convention, Agent Cool believes that the videos were recorded in February 2017. The Court finds that this assumption and the resulting inference are reasonable.

[5] In reaching this determination, the Court wishes to make clear that it fully rejects defense counsel's suggestion that Defendant did not "participate" in the events depicted on the video. Participation can take many forms. Here, Defendant stood inches away from two

- 7 -

The Court finds that the Government has not met its burden, and that the § 3142(g) factors support releasing Defendant. Therefore, this case will be set for a release hearing. As a final matter, if Pretrial Services determines that location monitoring is feasible, then such monitoring will be added as a condition of release.

**IT IS ORDERED** that this matter is set for a status conference on **November 16, 2021**, at **12:20 p.m.**, in Courtroom 3B of the Evo A. DeConcini United States Courthouse. The purpose of the hearing is for the Court to explain the conditions of release and for Defendant (or his attorney) to sign the conditions so that Defendant can be released.

Dated this 12th day of November, 2021.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

---

men who were unable to protect themselves from blows they could not see coming, and he did not intervene. That was participation.